It is nice to be in the Virgin Isles. And I tell you, when I say good morning in Philadelphia, I do not get that kind of reception. So I am happy to be here. I look forward to our sitting. And today, we are going to start with what we've called among ourselves the Trotter case. So when I was a district judge, we'd say, let's have appearances for the record. But I don't do that on the circuit. So I'd just say, sir, for the appellant, if you would. Thank you, and good morning. On behalf of plaintiff and appellant Michelle Trotter, my name's Tom Friedberg. Good morning to the court and counsel. Plaintiff and appellant request reserving five minutes for rebuttal. Five minutes it shall be. Thank you. Go ahead, sir. Thank you, your honors. The issue becomes, in this case, informed nonconvenience. Number one, was there an adequate alternative forum, the level of deference to be afforded the plaintiff's choice of forum, than a balancing of the relevant public and private factors? The district court erred in this case by failing to perform a choice of law analysis. The difference in this case is plaintiff is a US Jones Act seaman and has filed a statutory Jones Act claim, along with other claims for general maritime negligence, unseated worthiness, and maintenance and cure. Purpose of the Jones Act. Well, let me ask you this question about the Jones Act and its applicability here. So as I look at the case, you have the special venue provision. And the question is, to what effect should it have here? So should it act to preclude any form of nonconvenience analysis? Or should we look to other Supreme Court cases, like the Supreme Court's line of FILA cases, and say, well, in those cases, when the Supreme Court has looked at a special venue provision, it said that it precludes any form of nonconvenience analysis. So I'd be interested in your view of what we should do with the Jones Act and how the FILA cases play a role in that analysis. The venue issue is really not the issue for a form of nonconvenience. The issue in form of nonconvenience deals with the adequacy of the forum, and whether or not a plaintiff's choice of forum should be given predominant consideration. The issue of the Jones Act's special venue provision applies, then you don't get to the form of nonconvenience analysis. My understanding is that special venue provision is no longer applicable in the Jones Act. You mean the 2008 amendment makes it too broad now for any applicability? In this particular case, our analysis is not looking at the specific venue provision in the Jones Act, and we think the amendments are not the analysis the district court should have been engaged in, Your Honor. What you said seems to suggest to me that the plaintiff's choice of where to go, where to file a lawsuit dictates where the case is going to be considered. There's no forum, if I understand your response correctly, no forum nonconvenience analysis at all. Even though all the witnesses are in the British Virgin Islands, the incident happened there. Well, I said all the witnesses to the negligence claim. We would respectfully disagree. The evidence is that there were no witnesses to this incident. Well, is that not where the incident occurred, so that you would have your claim is against, apparently, the property owners of this place in the British Virgin Islands? Or are you asserting a claim against the owner of the boat? Defendants would wish our claim would be against the property owners. Plaintiff's claim is against the owner of the vessel. And it is a slip and fall on British Virgin Islands property. Your Honor, as a Jones Act seaman, Michelle Trotter was in the course of conducting her duties, which necessitated her leaving the vessel and going to the chef at Scrub Island and BVI's. OK, and then correct my thinking then. That sounds like a workers' compensation claim. That's a Jones Act claim, because plaintiff was employed by the vessel. And because plaintiff's employed by the vessel, if she is actually working at the time, injuries on land are cognizable under the Jones Act. Further cases that we've cited in our brief is that if, in fact, ingress or egress to the vessel, including stairs to a dock, are dangerous, the doctrine of unseaworthiness also extends. I just have one more. So if she were to pick up supplies, the boat is in St. Thomas, and she had to go pick up supplies in Scotland and got injured there. In Scotland? Yes. So the case would be brought in St. Thomas, not Scotland, even though that's where the injuries occurred. I think it strains the fact that it's really a stretched hypothetical, but that really follows from what you are saying. Well, I have to go back to the Neely case, which is this court en banc, pretty much set forth what we need to look at in dealing with the US Jones Act seaman. In Neely, as the Court is aware, you're dealing with a US citizen who was employed down in St. Lucia, was injured on a St. Lucia vessel, Club Med at that time. But Neely was not a foreign non-case. That Neely was just a choice of law case as to whether the Jones Act applied to a particular sea person. And your initial comments, Dustin, your brief, really criticizes the district court for, from your point of view, not engaging in a choice of law analysis. Correct? Correct. So let me ask you this. We have cases like Lacey, which look to Piper. And they say things like, a district court is not required to ascertain the law that would apply in the alternative forum. And if that's our precedent, how can we say the district court abused its discretion in the way that it considered that factor? The district court stated it did not know whether US maritime law would apply. And so the court went into this analysis with blinders on. And by doing that, these US seamans are wards of the court. But how can you say that the district court went in with blinders on when, before the court, your adversary produced an affidavit from someone on Virgin Islands law? And that material provided the district court a basis to conclude there was an adequate alternative forum. That is, a forum in which a tort claim could be pursued, remedies are available, and other process that we would think of in an adversarial proceeding exists in the British Virgin Islands. So how can we say the district court went in with this on blinders and abused its discretion when we have case law that says it's unnecessary to make the choice of law determination? Thank you, Your Honor. There are three problems with Andrew Thorpe's declaration. The Lax-Fet Foundation, the first problem is his declaration assumes that the parties live and work in the British Virgin Islands. Ms. Trotter doesn't live and work in the British Virgin Islands. Number two, Attorney Thorpe's declaration talks about this British common law. Plaintiff statutory claims are not British common law. I recognize that. And the third problem that Attorney Thorpe indicates is that we're not dealing with British Virgin Islands law. I mean, we're dealing with US law. OK, I understand your position on that point because I understand your Neely analysis completely. But I would like to know, how do you get around our precedent and the Supreme Court's language in Piper that say a district court is not required to ascertain which law would apply in the alternative forum? In Piper, you're dealing with a strict products liability issue, which was available in Scotland as well as the United States. Again, the district court ignored US maritime law. And I have to go back to that, Your Honor. And as well as the Jones Act, there's also maintenance and cure. These are uniquely US remedies. Here's a question I have for you on that because I'm not sure that you're answering Judge Schwartz's question. So I'm looking at the committee report on the amendment to the Jones Act of 2008. And it says, this subsection is being repealed to make clear that the prior law regarding venue, including the holding of Pure Oil versus Suarez, which is a Supreme Court case, and the cases following it, so that the action may be brought wherever the Siemens employer does business. Now, wherever the Siemens employer does business is pretty broad. You obviously have a difference of opinion as to what effect the amendment had. But given what I've just read, doesn't the amendment not preclude the consideration that I mentioned before about venue? Sure. The area where the venue where the Siemens employer conducts business, I would cite the court to JA 173, the joint appendix, where the statements are made by counsel Ruby Gonzalez, who essentially owns the Olga, is a sole shareholder of 7-Hour Charters, lives in Puerto Rico and owns the Olga and controls the Olga. The joint appendix 36, the Olga's chartered by 7-Hour Holdings, a Puerto Rican company, and Ruby Gonzalez. The home forum is the United States. Olga is, at the time of this incident, the base of operation was in the United States. The venue then, under the court's analysis, would be in the home forum of the United States, not DVI. But most importantly is that the situation has completely changed between the time the motion was filed and the court decided a year later. We have filed a request for judicial notice setting forth evidence that the Olga, in fact, was sold. It likely has no contacts to the British Virgin Islands. You didn't bring any of that to the district court's attention, and then you could have when it was pending, right? We did not know that at the time. What we did bring to the district court's attention is we did bring that the Olga was substantially marketed and charters were being made available in the U.S. Virgin Islands. In other words, in the United States, there was contradictory statement made by Captain Kalei. Captain Kalei also said that the Olga has never, ever been chartered in the United States. Well, we now know that Captain Kalei was prominent in the Real Housewives of New York, where the Olga was in St. Thomas on several episodes and being chartered in St. Thomas with Captain Kalei serving hors d'oeuvres to the Real Housewives. Although that you say that this claim arises out of Michelle Trotter's employment with the ship, and that is the essence of your claim, is that correct? That is correct. All right, so you no longer have a claim against the property owner in the Virgin Islands? Plaintiff's choice of form and choice of claims are against her employer, which she has filed in her choice of form. Plaintiff did not elect- In terms of liability, who are you going against? That is, who do you claim caused your client's injuries? Her employer. Not the property owner? Her employer, because plaintiff's presence on Scrub Island was in connection with her employment. As a U.S. Jones Act seaman, she's entitled to assert those claims. If there is a condition on the property adjacent to where the Olga is moored, that doctrine of unseaworthiness extends to allow plaintiff to assert that claim against the employer. If you had a trial in the U.S. Virgin Islands and the jury wanted to have an idea what this place looked like, the jury would have to go out to the British Virgin Islands to be flown there to see what this place looked like? No, Your Honor. There's photographs that were taken. We put in our papers- I've had a case in my other life as a trial attorney where we had photographs, but the jury still wanted to see what the car looked like, and it was brought over on a flat truck. But in this case, would the jury have to go if they wanted to see the premises and inspect the premises? No, for two reasons. Number one is we don't know what the premises are, whether they're the same or similar condition. We have photographic evidence showing what the condition is. But number two, more importantly, under the doctrine of unseaworthiness, it's akin to a strict liability. This comment, of course, goes to forum nonconvenience, which is part of Judge Goldman's analysis. We do not believe it's necessary to view the premises. We have evidence of the premises, and we put this in our papers in the court below. So you're saying Jones Act analysis is number one, it's game, set, match, that's all you have to do? You don't consider forum nonconvenience? No, we do consider it, Your Honor. We have to take a look to see whether or not plaintiff's choice of forum, those laws will be, due deference has to be given first to plaintiff's choice of forum, and whether there's an adequate alternative forum. There is not an adequate alternative forum here. Number one is that there are no actual witnesses of the incident in the BVIs. There's no evidence. Captain Kalei's affidavit is speculative. He says there may be witnesses in the BVIs. The only witness they can point to is an emergency room doctor at People's Hospital in Tortola. But plaintiff's treatment was primarily in Florida. It's common to have treating physicians testify about what happened in the emergency room. Emergency room physicians are rarely actually called when the ongoing treatment and disability, there will be experts for that. But most problematically, the witnesses established causation and damages  They are in Florida. Here's what I don't understand. So, you know, obviously when I was referring to the special venue provision, it's implicit now rather than explicit. So your point now is that even on a straight up forum non-convenience analysis, you should prevail. Yes. Yeah. And the reason is, is that when we go back and take a look at actually and balance the various factors, they preponderate to keeping the actual action in the home forum. And, you know, one of the challenges with the district court's opinion is, and we pointed this out in our brief, is the district court seemed to cut and paste from the Hoffman versus Rosewood Hotels opinion. And the reason I say that, your honors, is that the district court suggested that this accident happened, quote, at sea, close quote. Nowhere in any of the documents, is there any evidence or allegation the accident happened at sea. Well, the district court's opinion though, does point out that even the, you know, the sequence of events as you've described it. So I don't think you can say the district court was not conscientiously reviewing the record that was presented to it in setting forth the circumstances that led to your client's injury, as well as your adversary's perspective concerning how the choice of law issue should or should not interplay. So I'm not sure we can say the district court was not true to the record. The salient feature that I'm thinking, that I'm looking at is here, is that the ship, is it the Olga, is that correct? Yes. The only contact with the U.S. Virgin Islands is that that's where the boat was when the passengers arrived and everybody loaded. I just- Then it took off to the British Virgin Islands. I disagree, let's look at- And that's where the fall down accident occurred. Let me address that concern, your honor. Number one, Olga is looking at the evidence before the district court. What the court had is, let's look at the 30 days before this incident. Michelle Trotter was involved with the Olga for 29 of those 30 days. 20 of those days, she was in Florida. Why didn't you bring the case in Florida? Do you think your argument would be a little easier if it were in Florida? The Olga is in the Virgin Islands waters. This is where it was at the time. Although as the BVI's looking at the period of time prior to this incident, it was in Puerto Rico where Ruby Gonzalez resides. It isn't certainly, well, it could be. But is it because the U.S. Virgin Islands laws are more favorable than the British Virgin Islands laws or are they the same? Well, number one is that the claims plaintiff has brought are statutory claims are not recognized in the BVI's and their maintenance and cure claims are not recognized in the BVI's. You have a very strong interest in making sure the Jones Act is the guiding principle. As does Congress and the courts. That's why U.S. Seamen's are wards of the court and are entitled to special preference. But in getting back to the court's question regarding where the Olga is, of the nine days Michelle Trotter was on the vessel, six of those were in the U.S. in St. Thomas. There were three days in the BVI. To suggest that this is a BVI vessel strains the facts. The home base of this vessel, where it's provisioned, where it's marketed, is in the U.S. In fact, the evidence before the district court was that the Olga has preferred provisionaries, providers for provisioning the vessels both in Puerto Rico and St. Thomas. Oh yeah, but the vessel is owned by a, I guess it's a limited liability corporation, I'm not sure, but they're registered in the British Virgin Islands. Well, there's contradictory evidence. So is Ruby Gonzales. Ruby Gonzales is in Puerto Rico, is a Puerto Rican domiciliary at JA 173, again, a joint appendix 36. We have Ruby Gonzales in counsel's brief stating that Ruby Gonzales owns the Olga, or at least owned it at the time. Getting to where we are today, and looking at the time the case was dismissed, a year after the motions were filed, circumstances have changed significantly. Counsel has an obligation to advise the court of change relevant circumstances, and the court has to look at making its ruling on a foreign non-convenience dismissal at the time of dismissal. When there's changed circumstances, these circumstances need to be brought to the court's attention. This is an abuse of discretion, Stan. It is an abuse of discretion case. It's a very high bar. It is a high bar, but let's look at what the court failed to do as they were required to do. If the court is to dismiss the claim, the court has to make sure a plaintiff does have an alternative forum. The court made an unconditional dismissal. In the cases reviewed on these issues, the courts have generally stated that the conditional needs to be made dismissal. There's no guarantee that BVI would even hear this case. Did you ask the district court to revisit its order and make it a conditionally sounding order rather than a dismissal with prejudice order? No, we did not, Your Honor. We don't believe we waived that because the cases that we have cited allow for that. So we shouldn't have to worry about that then. If there's already case law that says if for some reason we were to affirm the dismissal and you get to the British Virgin Islands and it's not an adequate forum, you could then come back to the district court. Am I right? I believe Piper says that. Basically, is that plaintiff should be able to reinstate the claim in this home court. So then there's really no error by the district court for failing to be more explicit? Well, the district court essentially dismisses a case, closes a case. I mean, what the district court needed to do is make the dismissal conditional or realistically what the court should have done because they were given conflicting evidence. Plaintiff submitted evidence about charters in the U.S., plaintiff submitted evidence of the fact that the vessel was operating within the U.S. In fact, the evidence was produced that the vessel came over to use jet skis off St. John because jet skis are not legal in the BVI during the period of time of the charter. So clearly, the Olga, the evidence before the district court was it was operating within the U.S. Captain Kalei said, no, we don't operate in the U.S. What the district court needed to do at that point was at least allow plaintiff to conduct limited discovery and or allow plaintiff the opportunity to come back to the home forum, not make the dismissal unconditional. Yes, this is an abuse of discretion case. This is a situation when the district court basically didn't know what law to apply. That's, thank you so much. We'll get you on rebuttal. Thank you. Let's hear from your adversary. Okay. Morning, your honors. May it please the court. Michael Dono on behalf of the appellees. This is a case which has minimal U.S. contacts and that is why the district court elected to dismiss the case on the grounds of forum nonconvenience. The only connection this case really has to the United States is that the plaintiff in this case boarded the ship in the U.S. Virgin Islands. Could you address the important point here? Should the judge have done a choice of law analysis before forum nonconvenience or is it the other way around? I believe the choice of law analysis is done or considered in the forum nonconvenience analysis. One of the, I believe it's one of the public interest factors and that's where that particular issue needs to be looked at and was looked at by the court. It is also looked at in the forum nonconvenience analysis or in the decision whether to dismiss on the basis of forum nonconvenience. In determining whether the forum is adequate. Okay, so you always start out with a forum nonconvenience analysis, is that right? That's correct. In that analysis, you consider what law applies to determine whether the case should be decided in the local forum or a foreign forum? I believe in Piper, the U.S. Supreme Court, what the analysis that it provided there was you do not necessarily need to perform an examination of what exact, at the end of the day, what law will apply. It is whether the forum, which is being argued the case belongs in this case to BVI, whether that will hear the party's case and provide some form of redress. In that regard, one of the things is this issue of service and looking at all the submissions, I would like to know on the record here today whether Sevenar Holdings, Gonzalez, and the Olga are all willing to accept service. Because your expert says they all consent, but in the district court briefing, it only speaks of Sevenar. So I'd like to hear from you as to are the parties named as defendants in this case willing to accept service in the BVI? My understanding was that it was clear from the proceedings below that the parties had stipulated they were accepting service in the BVI. Where did that stipulation? I only saw it for Sevenar, and this is an important point, right to this adequacy issue. So I didn't see it. If you could tell me where in the record it is, because I only saw Sevenar. Sure. And the only other place I saw it was in your expert's statement saying he had been instructed to represent about that they would accept service, so. You're their agent, I'll get you. So can you make that representation? I believe the representation was, to answer your question, the representation was made in our motion to dismiss on the basis of forum non-convenience. The only party there named was at Sevenar. So can you make a representation as to all defendants in this case accepting service if this case were to go to the BVI? Is it yes or no? Take a deep breath, you can do it. Yes, the answer is yes. And the court can certainly remand to the district court to allow that the dismissal be conditioned on the parties accepting service in the BVI. That would be a solution to this issue. I did not believe this was an issue given that even in his and appellant's response to the motion to dismiss, I believe it was conceded that we had in fact stipulated and that was not really an issue that the district court was dealing with. We wanted to make sure, at least I for one wanted to make sure that there was no lack of clarity on that point because it is an important one, as you said. And we talked to your adversary about the adequacy of that other forum includes the fact that the parties can be hailed in front of it and that that forum can provide some relief by way of a cause of action and remedies for the injury allegedly sustained if the person proves it's their case. Correct, I understand your honor. So the second question I have has to do with Judge Greenway asked your adversary about pure oil. And the pure oil case speaks about venue under the Jones Act. And it essentially says that we're gonna look at venue for defining a residence as it's defined in section 1391 as in the general venue provision. And it even says that nothing in the legislative history of the provision of the Jones Act to indicate the framers meant to use residence as anything more than to refer to the general doctrines of venue rules, comma, which might alter in the future. So today our venue rules are basically for residency purpose coextensive with personal jurisdiction. So is it your position that the Jones Act doesn't have a venue provision in its four corners but turns to 1391 for venue purposes? I believe that's how it's being treated in the courts. However, the issue here is whether there needs to be a choice of law analysis performed before you get to a forum non-convenes. That's a different question. But I understand what your point is. So let's turn now if we could to the choice of law issue. I asked your adversary about Lacey. We have Cassano and we have Piper. Those cases seem to say, in fact a direct quote from Lacey is, the district court is not required to quote ascertain which law would apply in the alternative forum. Do you, what is your position on that language? I would agree with that language that there does not need to be a choice of law analysis performed before you get to a forum non-convenes. I think it's clear from the Piper decision and some of the other decisions, Cruz, and there's a Fifth Circuit decision which is also cited in- The airplane disaster case? Correct, yes. I think it's a 1987 case out of the Fifth Circuit in where the court there addresses the same issue and acknowledges that given the reasoning and analysis set forth by the Supreme Court in Piper, it is unnecessary to perform a choice of law analysis. A choice of law analysis is performed and in the actual forum non-convenes analysis. If we were to agree with you and say that the district court got it right for a non-convenience analysis, the case, I shouldn't say the case should be heard in St. Thomas, but why isn't it so that the choice of law would seem to favor the plaintiff's case because in the case should be, because of treating physicians, for one, and two of the three defendants in the case are U.S. residents? Well, I don't believe in the analysis that was performed by the district court that it abuses discretion. The court evaluated, given the record, where the availability of the witnesses were and really what the crux of this case is. Well, the primary defendants in the case appear to be the boat owners and they would testify in the United States, that is the U.S. Virgin Islands, not the British Virgin Islands. Her treating physicians are in Florida. Everything seems to be related to United States courts in terms of presenting evidence. I do not believe so, Your Honor, because really this is a negligence case and the negligence occurred in the British Virgin Islands in a party who is not currently present before this court and that is the Scrub Island Resort. As is acknowledged in Appellant's brief, that's actually where the injury occurred. So the fact that there were no eyewitnesses, it's really of no consequence because the people who would need to testify are personnel from the resort who will be able to testify what was the condition of the dock that day, who constructed the condition, who constructed the dock, who maintained the dock. Mr. Kruger says that we can just present photographs and maybe even videos and that should suffice. I don't believe that will suffice. And like Your Honor alluded to, there's instances where the jury wants to go view the premise. And this is not an instance where the injury occurred on the boat. You need to go see the place? Sometimes. There'll be a lot of happy jurors. We need to fly them over. That can't be so. But more importantly, the witnesses and the testimony that will be provided as to whether in fact there was any negligence in this case is in the BVI. It's in the resorts, it's in the resort and the personnel who man the resort or are employed by the resort. Is there any difference substantively in the law of negligence between the British Virgin Islands and the U.S. Virgin Islands? Your Honor, the evidence that is on the record is that the BVI is an adequate forum and it will recognize this tort claim. She will have redress in the BVI courts. So they'll apply the Jones Act? I don't believe I can. The record says whether yes or not they will apply the Jones Act. I know that BVI law has adopted English law. And for example, from my personal understanding having dealt with maritime cases, unseaworthiness was one of the claims that's been asserted is recognized, for example, by English common law. In fact, U.S. maritime law is born out of English maritime law. So there are remedies and redresses for injuries occurring to seamen. Could you explain, sir, does this concept of unseaworthiness of a vessel extend to somebody having a fall down accident on shore? That is one of the issues which I disagree with Appellant. I do not believe that that is in fact the case. Did he factor that into his analysis? He argues, from my understanding, that the Jones Act does apply in this case and that's why he's asserted it. You say it does apply? That's what Appellant is claiming. He's brought it as a cause of action in his complaint. Yeah. One of the things you argue is that because the Jones Act no longer contains a special venue provision, Congress amended the statute. You heard the part of the legislative history that I read. What role can we say the implicit venue provision has now going forward? Given there's a split in the circuits and I'm just interested in your analysis post-amendment as to what role that should play in our analysis. I don't know how much weight should be given to the legislative history in this particular case. What I do know is that the venue provision was in fact deleted. The Ninth Circuit decision, which is Zydell, I believe it is, from 1985, which applied a choice of law analysis before the forum non-convenes, placed a lot of stock on the fact that the Jones Act had a venue provision. And as the court is aware, that venue provision no longer exists. However, I don't believe to reach that conclusion, you need to really put much analysis into the issue of whether the Jones Act contains a venue provision or not. I think it's clear from the analysis of Piper is that you do not get into a choice of law analysis when you're dealing with a forum non-convenes issue. And whatever choice of law analysis it's already considered as one of the factors in the forum non-convenes analysis. Well, there are three circuits, the 11th Circuit, the Ninth Circuit, and the 10th, oh no, that's pre, post. Post 2008, there are two circuits that have considered the question and found that the Jones Act has a implicit venue provision that prohibits forum non-convenience dismissal. Have you looked at those cases? I have not, Your Honor. And there are cases that go the other way. Definitely, out of the Second Circuit and out of the Fifth Circuit, which are cases which deal with, to be honest with you, the majority of semen Jones Act cases in the country. That's where, from my understanding, given all the oil cases and the shipping cases that come out of the Fifth Circuit, that's one of the largest bulk of cases and same thing for the Second. Is it your argument that the Jones Act and choice of law analysis is not the starting point? No, correct, that's not. But it certainly can be factored in the forum non-convenience analysis. And it is, Your Honor, correct. That is my position here today. Did Judge Gomez consider choice of law in his analysis? He did, Your Honor. All right, I have no more. Anybody else? Okay, thanks so much. Thank you, Your Honors. Thank you, Your Honor. Choice of law needs to be at the forefront of the analysis. Otherwise, you emasculate the Jones Act. I mean, this is uniquely a unique remedy and it has to be upheld as the Congress has told us. That's what courts have interpreted. But that could be true of any federal statute that provides a cause of action that states may not apply. So you're suggesting that cases in which there's a federal statute that provides the remedy should be exempt from forum non-convenience dismissals? No, however, semen are entitled to special consideration, reward to the court. And that's the point I'm making, Your Honor, is that it was abuse of discretion not to recognize that. As Judge Gomez says, I don't know if maritime law applies or doesn't apply. What's the basis for that recognition if there isn't, at the very least, or at the most, I should say, a implicit venue provision? Because without that, then it seems to be that the Jones Act is another one of the factors that one would do in a straightforward forum non-convenience analysis. What's special about this? That's what I'm not getting. We think, obviously, the better views there should be a venue provision. But Jones Act semen are protected because their liability to the shipowner extends beyond the vessel. The court was asking counsel some of these cases. The Diffenbach case deals with unseaworthiness and deals with the dock condition. We cited that in our brief. It essentially says unseaworthiness extends to ingress or egress on land. And unseaworthiness is a strict liability cause of action. We also cited cases as far as, let me make sure I get the name right, the Haskell versus case, which really is very far. That's a semen who jumped from a whorehouse. And they said that the Jones Act applied because shore duty is a necessary component. I mean, the fact that this happened on the BVI is not necessarily fatal to plaintiff's case, as counsel seems to suggest. The court was asking regarding the stipulation for service. You know, I found it very interesting that Ruby Gonzalez, who really is the individual, never said he would stipulate for service in his affidavit. It was conspicuously missing. But what consequence would it have at this point in time if it were to be remanded? Doesn't own the vessel anymore. There are no ties to the BVI. That has to factor into the court's decision. And even assuming there was a stipulation to assume service of process there, there's no guarantee the court would accept. Attorney Thorpe's declaration has a number of inconsistencies and problems. We point these out in our brief. Primarily, he's based it upon information which is not correct. And BVI is not the natural forum. And Attorney Thorpe actually goes on and talk about the fact that if it's not the natural forum, it's unlikely the BVI courts would even accept this case. So to make the leap of faith. Well, but what would countervailing evidence did the district court have in front of it to reject that affidavit? The fact that the district court had evidence that the parties did not live and work in the BVI's. That was before the court. The court disregarded plaintiff's affidavit. Michelle Trotter submitted a rather lengthy detailed declaration. Nowhere in there was a basis for Attorney Thorpe's assumptions. Number two is Michelle Trotter, who was the person who actually fell, said no one saw me fall. Yet Attorney Thorpe said, well, Captain Kalei said someone may have seen it. So this is now worfed into there are witnesses to the accident. This was all before the district court. The district court abused its discretion by just ignoring plaintiff's evidence. And essentially this was a result driven decision. What's the guiding force underlying the Jones Act? I'm sorry, Your Honor? Guiding force underlying the Jones Act. To make sure USC men are protected and not subject to foreign laws. Say that and make sure that USC men are protected. By being able to bring their claims in U.S. courts and not be subject to the common law of other jurisdictions. Seamen go from jurisdiction to jurisdiction. The purpose of the Jones Act is to make sure they have an adequate and appropriate forum in U.S. courts. Okay, so if, again, going back to maybe, I don't want to exaggerate hypotheticals, but if the Auga were in New Zealand and the same incident happened, the suit would be brought in U.S. courts. Similar to your analysis. Similar to the Greek case where it was essentially a Greek shipping company and the actual Greek vessel, and the name escapes me, we just cite it in our brief, but it was doing substantial business in Greece. And in that case, the court said, yes, you can bring a Jones Act seaman because of the fact that the Greek shipping interest was using U.S. commerce and using U.S. bases, it must be held accountable to the Jones Act. So yes, the Jones Act has wide reach and scope. Plaintiffs should be afforded the appropriate forum. We request the court remand this to the district, reverse and remand the district court over the alternative, remand it and allow us to conduct the discovery we've requested. Thank you, your honors. Thank you very much.  I see we have a group of visitors that I want to acknowledge. We have some students from the Good Hope Country Day High School, welcome. Hope you're having a interesting time. We'll have some time when the cases are over to introduce ourselves and answer the questions that we can, although don't ask us how we're gonna rule. That's not okay. But I do want to acknowledge the student's teacher, Chris Fletcher and their coordinator, Mrs. Colon. So good morning to you and thanks for the civics lesson.